AMERICAN CITIES POWER AND LIGHT CORPORATION et al., Plain-
tiffs, *v.* HARRISON WILLIAMS et al., Defendants.

Supreme Court, Special Term, New York County, March 20, 1947.

*Milton Pollack* for Harrison Williams, defendant.

*Lewis M. Dabney, Jr.,* for plaintiffs.

SHIENTAG, J.  Motion by defendants for an order dismissing the complaint and for judgment in favor of the defendant Harrison Williams, pursuant to subdivision 6 of rule 107 of the Rules of Civil Practice, on the ground that the causes of action set forth in the complaint did not accrue within the time limited by law for the commencement of an action thereon. Motion was also made to dismiss the seventh cause of action for legal insufficiency.  For the purposes of this motion all of the allegations of the complaint must be deemed to be true.

Plaintiff American Cities Power and Light Corporation (American Cities), a Virginia corporation doing business in New York, and its assignee, Jensen, have sued Central States Electric Corporation (Central States) and Harrison Williams who, it is claimed, dominated both Central States and American Cities during the period when the acts complained of took place, for a rescission of the transactions involved and for damages.

It is alleged that Williams was the majority stockholder of Central States and that Central States had voting control of American Cities, although the public had a majority investment therein.  The first cause of action refers to an alleged unloading in 1929, by Central States on American Cities of half of Central States' interest in a joint trading account which Central States had in the stock of Shenandoah Corporation.  This account was conducted by Goldman Sachs & Co.  By August 20, 1929, the joint trading account between Central States and Goldman Sachs had prospered to the extent that the market price of Shenandoah had risen from $17.50 to $39 a share. Central States, however, was out of cash and could not support the market should the public begin to take profits.  Williams, therefore, procured American Cities, which had plenty of cash, to purchase one half of Central States' commitment in the Goldman Sachs trading account.  American Cities thus bought substantially at the top of the market.  Trading operations were adversely affected by the market crash and on December 14, 1929, American Cities took over its participation at a cost of $8,300,000.  Seventeen days later it sold this par-

ticipation back to Central States at a loss of $4,700,000. Rescission and damages against Williams and Central States are demanded.

The second, third, fourth and fifth causes of action arise, it is alleged, out of the promotion of the Blue Ridge Corporation by Williams and Goldman Sachs & Co. According to the allegations, in August, 1929, Central States and Goldman Sachs entered into a contract for the formation of Blue Ridge. Shenandoah and the public put up $70,000,000 for the stock of Blue Ridge. Blue Ridge used $35,000,000 of this money to purchase securities from Central States and $35,000,000 to purchase other securities from the Goldman Sachs interests. Central States owned two lots of securities: some 79,000 shares of General Realty & Utility Corporation (General Realty), having a market value of about $3,100,000, and 32,000 shares of Goldman Sachs Trading Corporation, valued at $3,520,000. It is alleged that Williams knew that these securities could not be unloaded on Blue Ridge because a sophisticated buyer such as Blue Ridge would know that the market price of the securities had been manipulated. American Cities owned certain shares of Commercial Investment Trust Corporation and Stone & Webster, Inc., which were acceptable to Blue Ridge. Accordingly, Williams caused American Cities to exchange its good securities with Central States for General Realty and Goldman Sachs shares held by that company, and Central States turned over these securities to Blue Ridge for cash.

Central States also held two blocks of stock in General Realty, one of which it could not sell because of a syndicate agreement and another block which was salable at will. Central States transferred to American Cities 80,000 shares of restricted stock, charging the price at which unrestricted shares were then selling on the market. These shares were turned over on September 5, 1929, at $39 a share. They were part of a block which Central States had agreed to purchase at $20 a share, but it did not pay $20 a share until the money had been procured from Blue Ridge. Thus, it is charged, Williams defrauded American Cities and made a profit for Central States, of which he was the majority stockholder, of $1,900,000 in an operation lasting less than three weeks. He forced American Cities to finance the transaction by which it was defrauded. American Cities eventually sold its General Realty for $240,000 and its Goldman Sachs shares for $96,000, involving it in a net loss of $6,280,000.

The second and fourth causes of action set forth the facts as above outlined except for the element of market manipulation. The third and fifth causes of action add allegations respecting manipulation of the market price of the securities plus the fact that Williams fraudulently failed to disclose such facts to American Cities, which did not discover the facts and the fraud practiced upon it until August, 1945. The allegation is to the effect that while Williams and Central States were well aware of the facts, "nevertheless, they fraudulently failed to disclose such facts to American Cities, which was ignorant of such facts."

The sixth cause of action relates to transactions in November, 1938, and January, 1939, in which Williams caused American Cities to exchange with Central States $6,190,000 principal amount of 5% and 5½% debentures of Central States in return for 92,850 shares of North American Company common stock, which Central States then owned. Long prior to and at the date of the exchange, Central States was insolvent. Its earnings were insufficient to pay interest on its debentures and such interest had been paid out of capital. The motive for paying out of capital was to stave off a possible bankruptcy and discovery of the wrongdoing. At the date of the exchanges the assets and debts of Central States were such that the value of the portion of its assets which would accrue on liquidation to Central States debentures held by American Cities exceeded by $1,000,000 the value of North American common obtained by American Cities in exchange for these debentures. The profit to Central States by acquiring and destroying its own debentures over the dividends on the transferred North American stock exceeded $3,000,000. Rescission and damages are prayed for in this cause of action.

The seventh cause of action pleads that by reason of the acts alleged in the previous causes of action, American Cities had valid claims against Williams and Central States for rescission and for damages exceeding $15,000,000 in value. It is then alleged that after the accrual of the causes of action Williams and Central States and the directors of Central States and American Cities and other successors in office entered into a plan and conspiracy to prevent the bringing of any suit or action by American Cities against Williams and Central States " and at least to defer the bringing of such suits or actions until after the running of the statute of limitations." Pursuant to this conspiracy " (a) They concealed from American Cities and from its stockholders the existence of the said causes of action.

(b) They caused to be issued by American Cities annual and other periodic reports to stockholders which with respect to the transaction complained of in the Sixth cause of action herein set forth, contained an inadequate and misleading report and with respect to the other transactions, contained no report or mention. (c) Through the exercise of voting control they kept in office officers and directors of American Cities who were submissive to their will and who were unable or unwilling to act in the interests of American Cities when such interests conflicted with the interests of Williams and Central States. (d) They failed and refused to cause Central States to file a petition for receivership or under Section 77B or Chapter X of the Bankruptcy Act, although Central States was at all times after the year 1929 insolvent and in need of reorganization. The reason for such conduct was that Williams and Central States well knew that the institution of such proceedings would eventually result in American Cities obtaining an independent and honest management which would investigate, discover and enforce the claims herein asserted. (e) In order to prevent defaults in payment of interest which would result in involuntary proceedings for receivership, or under the Bankruptcy Act, they caused Central States for many years to pay interest on its debentures out of its capital when its annual earnings were substantially less than such interest."

It will be noticed that the matters referred to in the first five causes of action arose in 1929. The motion is made to dismiss these causes of action as barred by the Statute of Limitations. The appropriate Statute of Limitations in 1929 for waste of corporate assets was six years. Since then the statute has been reduced to three years. The causes of action pleaded are obviously barred and plaintiffs so admit unless plaintiffs are protected by the provisions of subdivision 5 of section 48 of the Civil Practice Act, which provides that a cause of action based on actual or implied fraud arises on the discovery of the fraud, and not on the doing of the wrongful acts (*Hearn 45th St. Corp.* v. *Jano*, 283 N. Y. 139). Defendants claim that no actual or implied fraud is shown and that, therefore, plaintiffs can derive no advantage from subdivision 5 of section 48. In applying the Statute of Limitations it has frequently been held " we look for the reality, and the essence of the action and not its mere name." (*Brick* v. *Cohn-Hall-Marx Co.*, 276 N. Y. 259, 264; see, also, *Cohn* v. *City Company of New York*, 283 N. Y. 112, 117; *Schmidt* v. *Merchants Despatch Trans. Co.*, 270 N. Y. 287, 295; *Hearn 45th St. Corp.* v.

*Jano,* 283 N. Y. 139, *supra.*) Here, in essence, the wrong charged was breach of fiduciary duty in the waste of corporate funds. The charge that the breach was fraudulent does not operate to change the essential character of the wrong claimed.

In order to bring the case within subdivision 5 of section 48 of the Civil Practice Act the allegations must be sufficient to charge fraud and deceit with all the elements present, as outlined in the leading case of *Reno* v. *Bull* (226 N. Y. 546).

I can find no allegations of fraud other than the matters cited relating to failure to disclose to the corporation. It is conceded on the argument, however, that all of the directors of the corporation were quite aware at all times of the transactions which were taking place and there is no allegation that the directors were misinformed or ignorant of the facts when they acted. The corporation is therefore chargeable with notice and no cause of action for nondisclosure is pleaded unless we adopt plaintiffs' argument that there should have been a disclosure to the stockholders, members of the public who had no chance to discover the facts. That point will be further discussed in relation to the sixth cause of action.

The matters which occurred in 1938 and 1939 are also transactions involving waste. As such, they are barred by the three-year statute. Plaintiff, however, claims that the ten-year Statute of Limitations should be applied to the sixth cause of action. They say that they have a more effective remedy in equity because of the doctrine of *Mack* v. *Latta* (178 N. Y. 525). They have elected to join the defendant Williams and the defendant Central States in an equitable action asking rescission and damages.

It was held in *Mack* v. *Latta* (*supra*) that in the interests of avoiding multiplicity of actions all parties connected with the transaction might be joined in an equitable action demanding rescission. But the case did not hold that permission to join parties was also permission to assert a claim against an individual defendant, otherwise barred by the Statute of Limitations, nor did the decision lift the bar of limitations on such joinder. It is also argued that until final judgment in an equity suit plaintiffs cannot appraise the extent of the damage for which Williams might be liable and that, therefore, he should be kept in the case until there is a rescission judgment against Central States. It is evident that since Williams received none of these transferred securities directly or indirectly, there cannot be a remedy of rescission against him. The adequacy of the legal remedy for damages does not depend on the collectibility of the

claim (*Blank* v. *La Montagne, Chapman Company, Inc.*, 123 Misc. 238; *Thompson* v. *Allen County*, 115 U. S. 550; *Rees* v. *City of Watertown*, 19 Wall. [U. S.] 107). It is also a fact that doubt as to the measure of damages does not constitute an exception which tolls the period of limitations (*Corash* v. *Texas Co.*, 264 App. Div. 292). In other words, the existence of legal or constructive fraud does not make out a case for the ten-year statute where there is a legal remedy for waste by a corporate fiduciary.

Referring further to the contention of plaintiffs that the six causes of action are protected because of failure to disclose the facts to the stockholders and that, therefore, subdivision 5 of section 48 of the Civil Practice Act applies, I am unable to find any decisions which hold to that effect. Once it is conceded that at the time the action was taken by Williams the other directors knew what was being done, it seems clear that the corporation is chargeable with such knowledge. In such a situation the only people from whom it may be said that there has been a concealment are the general class of innocent, uninformed stockholders. This does not give a cause of action under subdivision 5 of section 48 many years later, when the innocent stockholders discover the facts. This was decided by the Court of Appeals in *Lever* v. *Guaranty Trust Co.* (289 N. Y. 615). There the court made an order dismissing the complaint, which alleged that the damaging facts had never been disclosed and were still unknown to the stockholders generally and that the plaintiff stockholder first discovered the existence of the facts during the year in which he brought suit. In *Teich* v. *Lawrence* (291 N. Y. 245) a similar claim of concealment from stockholders was made. The Court of Appeals cited the decision in the *Lever* case (*supra*) with approval, saying: " A stockholders' derivative action belongs to the corporation that has been wronged. The present complaint alleged no fraud upon the defendant corporation in whose behalf plaintiffs sue.''

The conclusion is inescapable that if failure to disclose wrongdoing to stockholders does not give rise to a cause of action under subdivision 5 of section 48 at the time of the discovery of the wrong by some active stockholder, then there is no basis from which actionable fraud, actual or implied, may be spelled out in its complaint.

The seventh cause of action is in the nature of a so-called secondary action. As above stated, it claims damages against Williams and Central States for conspiring to cause the Statute

of Limitations to run against the primary wrongs. Plaintiff says that the propriety of this type of secondary action has been recognized by the Court of Appeals in *Lifshutz* v. *Adams* (285 N. Y. 180). Defendant has moved specifically against the seventh cause of action not only on the ground of the Statute of Limitations, but for failure to state a cause of action.

There may, of course, be an action in an appropriate case against directors who, not having participated in the original wrongful act, learn of it and improperly fail to take action and allow the Statute of Limitations to run out and to act as a bar to the claim of the corporation for redress or restitution.

That, it seems to me, was the type of action which the court contemplated in *Lifshutz* v. *Adams* (*supra*). That action would be an independent action but it is not the type of cause of action which is here asserted. The seventh cause of action is in the nature of what may be termed a secondary action. It is sought to charge the defendant Williams, the original alleged wrong-doer, not only with the commission of the original wrong but with a further wrong in that he conspired to conceal the true facts from the stockholders or misrepresented the facts so as to lull them into a false sense of security and preclude them from taking appropriate action to protect the interests of their corporation before the Statute of Limitations expired. The mere continuance of the original wrong would not operate to establish a secondary cause of action for allowing the Statute of Limitations to run out. If that were so, there might be a doubling of the period of the Statute of Limitations.

Although the Statute of Limitations has run against the original wrongful act complained of, there may be another cause of action for fraud against the original wrongdoer for inducing the stockholders to refrain from instituting appropriate action in time to prevent the claim from being subjected to the statutory bar. In such a secondary cause of action it would be necessary to set forth in substance all of the elements constituting fraud and deceit. The allegations of the seventh cause of action seeking to set up such a secondary claim fail to comply with the essential requirements of an action in fraud and deceit.

The motion to dismiss the first six causes of action is granted. The motion to dismiss the seventh cause of action is granted, with leave to serve an amended complaint within twenty days after service of the order to be settled hereon, with notice of entry thereof.