Samuel H. Hofstadter, J.
The petitioner, the holder of 500 shares of the common stock of Pathe Laboratories, Inc., a New York corporation, applies for a judicial determination of the value of its stock, pursuant to section 21 of the Stock Corporation Law, upon the merger of the corporation into Pathecolor, Inc., a Delaware corporation. The respondent cross-moves to dismiss the petition as untimely. Since Pathecolor, Inc., as an incident of the merger changed its name to Pathe Laboratories, Inc., confusion will be avoided by referring throughout this *749 opinion to the merged corporation, of which the petitioner is a stockholder, as Laboratories, and to the possessor corporation which absorbed Laboratories as Pathecolor. The petitioner will be referred to as Bank.
Laboratories at the time of the merger was authorized to and had issued and outstanding 10,000 shares of common stock of the par value of $1 per share. Bank owned 500 of these shares or 5% ; the remaining 95% of the outstanding shares was owned by Pathecolor. Pursuant to section 85 of the Stock Corporation Law of New York, the board of directors of Pathecolor at a meeting held on April 25, 1961, adopted a resolution by which Pathecolor merged Laboratories into itself; the resolution provided that the shares of Laboratories owned by Pathecolor should be cancelled and no shares of Pathecolor be issued in their place and that the “ holders ” of the shares not owned by Pathecolor should be paid in cash at the rate of $84.58 per share upon surrender of each share. On April 27, 1961, Pathecolor executed a certificate of ownership merging Laboratories into it, in which it set forth the resolution of April 25, 1961 and, as required by section 85 of the Stock Corporation Law, stated that on April 27, 1961, its officers had caused to be mailed to each stockholder of record of Laboratories a copy of the resolution and notice of its adoption. This certificate was filed in the Department of State of the State of New York on April 28, 1961. On May 1, 1961, Pathecolor filed in the office of the Secretary of State of the State of Delaware, the State of its incorporation, a certificate of ownership and merger, in which it also assumed the name of Pathe Laboratories, Inc., in place of Pathecolor, Inc.
Since the only issue to be determined is the timeliness of Bank’s present application, the chronology of events becomes critical and must be recited in some detail. Bank is incorporated in England and has its principal place of business in London. The first notice of any kind of the merger addressed to Bank was that of April 27,1961, mentioned in the certificate of ownership filed in the New York Department of State. This was a formal letter signed by both Laboratories and Pathecolor, forwarding a copy of the April 27, 1961 certificate of ownership and a “pro forma consolidated balance sheet giving effect as of December 31, 1960 of the merger and changes in capitalization ”. The letter stated further: “As a stockholder of
record of Pathe Laboratories, Inc., you are entitled to a copy of the resolutions of the Board of Directors of Pathecolor, Inc. effecting the aforementioned merger. The enclosed Certificate of Ownership includes the merger resolutions, and this letter *750 and said enclosure shall constitute notice to you that said resolutions have been duly adopted ’ ’.
This April 27,1961 letter was sent to Bank at 38 South Street, London W. 1, England, by ‘ ‘ Begistered mail, Beturn Beceipt Bequestcd ”; it was, however, sent by surface, not by air mail, and did not reach the Bank mailroom until May 10, 1961, on which date it was receipted for by some employee of Bank. It is not disputed that through an unexplained slip this letter of April 27,1961, and its enclosures, were lost and never reached any officer or executive of Bank.
The next communication to Bank was Laboratories’ letter of May 18, 1961, sent in exactly the same way as the letter of April 27, 1961, and received by Bank in London on or about May 29, 1961. This May 18 letter, after referring to the transmission in the April 27, 1961 letter of the copy of the certificate of ownership and informing Bank that on May 1, 1961 Pathecolor, Inc., had changed its name to Pathe Laboratories, Inc., enclosed a bank check for $42,290 in full payment for Bank’s 500 shares of Laboratories at $84.58 per share, and requested Bank to forward to Empire Trust Company the Laboratories’ share certificate or certificates held by it. It is beyond dispute that the first actual notice of the merger received by Bank was that conveyed in the May 18, 1961 letter.
Immediately on the receipt of this letter, Bank through its secretary on May 29, 1961, sent Laboratories an airmail letter asking for a copy of the April 27 letter and enclosures “ as we are unable to trace their receipt”. Laboratories replied on June 1,1961. It did not, however, forward the requested papers. Instead, it sent a photostat of the postal receipt evidencing receipt of the April 27 letter and enclosures on “ 10-5-61 ” (10th May) and concluded: “ With this information we believe you will be able to locate the April 27 letter and enclosures ”. By letter of June 13, 1961, Bank wrote Laboratories that, while receipt of an envelope had been traced, the April 27 letter and its enclosures had not been located and 111 should, therefore, be grateful if you would let me have a copy ’ ’. This letter, as well as a follow-up letter of June 27, 1961, and cablegrams of July 5 and July 18, 1961, repeating the request for the documents, were never answered. Accordingly Bank, through its present attorneys, early in August, 1961, and thereafter, sought the needed papers but not until September 21 and 22, 1961 were they forthcoming. Promptly after their receipt Bank, pursuant to the statute, on September 28, 1961 served the formal notice of objection to the merger and demand of payment for its stock, upon which the present proceeding is founded. It is thus *751 perfectly plain that not until September 21 and 22, 1961, when its attorneys received the copies of the papers, did Bank know the date of the filing of the certificate of ownership in the New York Department of State.
The statement of a few additional facts will be helpful to a better understanding of the setting in which the question here posed must be considered. A Delaware corporation, Bank Organization, Inc., whose principal place of business is in New York City, is known generally in the motion picture industry as Bank’s United States liaison office. Its president is Bobert S. Benjamin, a member of the law firm acting for Bank in this proceeding. Benjamin in 1960 was in negotiation with Gordon Greenfield, president of Pathecolor and chairman of Laboratories, for the sale of Bank’s stock in Laboratories. There were also meetings both in New York and London between Greenfield and John Davis, Bank’s deputy chairman and managing director, looking to the possible sale of the Bank stock and the making of a laboratory agreement and correspondence on the subject was exchanged as late as March and April, 1961. In a letter of April 12,1961 to Greenfield, Davis asks, 1 ‘ May I hear from you at an early date please? ” Throughout, the purchase price discussed was substantially more than the $42,290 under the terms of the merger. It is true that Pathecolor and Laboratories urge that a so-called laboratory agreement was indispensable to a sale of the stock. Even so, the fact remains that the sale was still under discussion. Nor is it denied that in October, 1961, an officer of Pathecolor refused to tell Bank’s attorneys what method of evaluation had been used in fixing the value of Bank’s stock in Laboratories and also declined to provide recent balance sheets and profit and loss statements of Laboratories.
Section 85 of the Stock Corporation Law permits a corporation owning at least 95% of the stock of another corporation, authorized to engage in business similar or incidental to that which it is authorized to engage in, to merge the latter corporation into itself by vote of its board of directors. The stockholders owning 5% or less of the shares of the corporation so merged have no voice at all in the matter; the merger becomes effective solely by the fiat of the directors of the corporation owning 95% or more of the outstanding shares of the merged corporation. All the minority stockholder can do is accept the payment fixed by the terms of the merger or avail himself of the right of appraisal in accordance with subdivision 7 of section 85 and section 21 of the Stock Corporation Law (Beloff v. Consolidated Edison Co. of N. Y., 300 N. Y. 11,19). Under subdivision 7 of section 85 he must file objections and demand payment for *752 his stock ‘ ‘ within twenty days after the filing of the certificate with the secretary of state”. Pathecolor and Laboratories insist that Bank’s notice and demand of September 28, 1961, having been filed more than 20 days after April 28, 1961, the date of the filing of the certificate of ownership, Bank’s petition is now too late. They say that they took every step prescribed by the statute and complied with all its requirements to the letter and that Bank’s ignorance of the date of the filing of the certificate of ownership was Bank’s misfortune, but not their fault or responsibility. They claim too much.
We are not dealing here with numerous scattered minority stockholders. We have a single stockholder — an English corporation situated in London, which, to the knowledge of Pathecolor and Laboratories has what is, for all practical purposes, a New York representative, headed by a New York lawyer with whom the Pathe corporations had been in negotiation for the purchase of Bank’s stock. Communications contemplating possible purchase had been exchanged until almost the very eve of the merger meeting. Did the form of the notice given, the manner of its transmission, and Pathecolor’s later conduct meet its duty of good faith and fair dealing? Did Pathecolor discharge its fiduciary obligation as a majority stockholder? These questions, we repeat, are addressed solely to the concrete situation here presented.
When the April 27, 1961 letter to Bank was sent Pathecolor had, through the adoption by its board of directors of the merger resolution, already taken the step — the only one prescribed in the statute — to effect the merger, other, of course, than its formalization through the filing of the certificates in New York and Delaware. Since Bank was not entitled to advance notice of the intended action, the letter of April 27, 1961 could merely inform it of an accomplished fact which it was powerless to undo. In the circumstances, Pathecolor should, at the very least, have made a genuine effort to assure Bank the enjoyment of the only right left to it under subdivision 7 of section 85 of the Stock Corporation Law — that of having its stock appraised and paid for as provided in section 21.
The statute may not be read so literally as to thwart its true purpose. Though section 21 in terms extends the right of appraisal to all stockholders who comply with its provisions, the courts have imposed the added requirement of good faith, and have denied appraisal to one who, for the purpose of capitalizing on this statutory right, has acquired his stock after notice of the intended corporate action on which he founds the right of appraisal (Matter of Leventall, 241 App. Div. 277, 283; Matter of *753 Dynamics Corp. of America v. Abraham & Co., 4 Misc 2d 50). A corresponding duty of good faith is owed to the minority stockholder. If, by reason of the form and method of transmission of the purported notice, the minority stockholder has not been afforded a real opportunity to act within the period prescribed by the statute, the majority stockholder should not in equity be heard to take advantage of the lapse. Majority stockholders owe the minority the utmost good faith and may not in defiance of this fiduciary duty use their power in disregard and at the expense of the interests of the minority (Kavanaugh v. Kavanaugh Knitting Co., 226 N. Y. 185, 195; Warnecke v. Forty Wall St. Bldg., 8 Misc 2d 317, 323; Ribakove v. Rich, 13 Misc 2d 98,101-102; Pepper v. Litton, 308 U. S. 295, 306-307, 311-312).
The course pursued by Pathecolor certainly did not meet the duty so declared. The statute gives the objecting stockholder “ twenty days after the filing of the certificate with the secretary of state ” to make his demand. Neither the letter of April 27, 1961, nor any of its enclosures, stated when the certificate of ownership would be filed. Even had that letter on May 10, 1961, the date of its arrival, come to the attention of some one in authority at Bank familiar with the New York statute, this • person would still have been without knowledge of the date on which the 20-day statutory period began to run. Nor did the letter or the enclosures tell Bank anything at all about the right of appraisal. In the light of the relation of the parties and their prior negotiations already mentioned, these omissions cannot be reconciled with accepted standards of fair dealing between associates, especially so when the one to be cut off is in England where he may find it difficult, if not impossible, to learn promptly what steps he must take under the law of New York for the protection of his rights.
Judicial notice may almost be taken of the prevalent use of air mail in international business communications. Yet, the April 27, 1961 letter was dispatched by surface mail. When it arrived in the Bank mailroom on May 10, 12 of the 20 days after the filing of the certificate on April 28,1961 had already elapsed, so that only 8 days remained within which to act. It must be presumed that the statutory purpose is to give the minority stockholder to whom notice of the merger is sent a full period of 20 days within which to study the situation, ascertain his rights and determine his course of action. Such full period could easily enough have been assured here by the simple expedient of permitting a sufficient interval to pass between the sending of the notice and the filing of the certificate of ownership. *754 No need for haste appears. Had Pathecolor really wished to afford Bank the opportunity for inquiry and deliberate action the statute was intended to secure, all it had to do was to send a copy of'the April 27, 1961 letter to Bank’s New York office when it mailed the original to London, or to send the original by air mail. Its use of surface mail resulted in cutting down by more than half the statutory period of 20 days. This curtailment in time, accentuated by the failure to call Bank’s attention to the immediacy of the situation, in the circumstances shown, satisfied neither the command of the statute nor Pathecolor’s fiduciary obligation. This is so, wholly apart from the fact that the papers never reached any responsible person in the London office and that Bank was, therefore, without knowledge at all of what had occurred.
Pathecolor’s later conduct in not furnishing copies of the merger papers until September 21, 1961, and then only under pressure from Bank’s counsel, seems to bespeak a studied purpose to keep Bank in the dark as long as possible. The contents of the April 27, 1961 letter and the method by which it was forwarded also reflect this purpose. It is established beyond question that Bank did not acquire the necessary knowledge of the merger until September 21; it then acted swiftly in serving its objection and demand for payment on September • 28, 1961.
Pathecolor, having abused its fiduciary position, must be held equitably estopped from asserting the untimeliness of Bank’s objection to the merger. The doctrine that a court of equity may deny a party, whose breach of his fiduciary duty has led his adversary to withhold action until his claim is time-barred, the benefit of the statutory bar has very recently been reaffirmed, upon a full review of the authorities (Erbe v. Lincoln Rochester Trust Co., 13 A D 2d, 211, 213-215 and cases there cited). As the court there said, this is merely an application of the maxim that no one may take advantage of his own wrong.
Accordingly, the application is granted and the cross motion to dismiss it as untimely is denied.