The State of Tennessee ex rel. Lowell Wiper Supply Company

*v.*

Helen Shop, Inc., et al.

362 S.W.2d 787.

(*Nashville,* December Term, 1961.)

Opinion filed November 15, 1962.

Rehearing Denied December 14, 1962.

SHEPHERD, HEISKELL, WILLIAMS, BEAL & WALL, Memphis, REICH, SPITZER & FELDMAN, New York City, for appellants.

**110**

ABE D. WALDAUER, JAMES H. COOPER, RICHARD H. KREMER, Memphis, for appellee.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is an appeal from the action of the Chancellor in ordering that the appellants, Helen Shop, Inc., et al., permit an inspection of its corporate books and records by Lowell Wiper Supply Company. Specifically the Court ordered:

"That the peremptory Writ of Mandamus prayed for in the Bill is hereby issued, commanding the defendant forthwith to permit the complainant, or its duly authorized officers, agents, accountants, and attorneys, to examine the books and records of the defendant Helen Shop, Inc., particularly the minute book, by-law book, stock books, stock ledger, all journals, books of account and all other records relating to the financial condition of the company, and any leases that the Company may have entered into with respect to the real estate it is occupying or otherwise."

The Court also held that the relator, Lowell Wiper Supply Company, is the owner in its own right and name

of the shares of stock in the appellant corporation which were made an exhibit to the original bill.

From the action of the Chancellor in so ordering and decreeing Helen Shop, Inc., et al., have appealed and assigned errors. We will not dispose of these assignments seriatim, but all of them will be given due consideration in this opinion.

It appears that in the year 1953 Elias Shapiro borrowed $50,000.00 in cash from Lowell Wiper Supply Company, a corporation, signed a note therefor and pledged as security for the payment of said loan 350 shares of preferred stock as collateral. Thereafter, Mr. Shapiro placed 350 shares of common stock of said corporation as additional collateral or security, and later 50 shares of common and 50 shares of preferred were added to the security.

The note matured on September 15, 1954, and one day prior thereto the escrow agent sent to the relator a substitute note payable on September 15, 1955. This note was signed by Mr. Elias Shapiro and endorsed by his brother, his wife, his son and business associates. Said escrow agent, in addition thereto, transmitted all collateral securities into the possession of the relator. The substitute collateral security agreement dated September 2, 1954, as did the original agreement of October 5, 1953, provided that "upon repayment of the said sum of fifty thousand dollars ($50,000.00), I shall return the aforementioned security to you. However, in the event of a default in the payment of the said note and the continuance of such default for ten (10) days after notice in writing to you, I shall have a right to sell the securities and apply the proceeds in liquidation of the note".

Mr. Shapiro signed the agreement of October 2, 1953 and September 2, 1954.

At some later date a demand note was substituted for this time note.

In June, 1957, Mr. Shapiro suffered further business reverses and when asked for payment of the note by Mr. Feinberg, Mr. Shapiro said: "He couldn't make any payment; he was broke and I (Feinberg) should take possession of the stock and have it transferred."

Thereafter, and still in the month of June, 1957, the relator applied to the appellants to have the stock transferred and reissued in its own name. On August 21, 1957 this was accomplished. According to the proof Mr. Shapiro was to be given, and he was given, a credit of $40,000.00 on the note for the transfer of the stock to the relator corporation, leaving a balance due of $10,000.00.

On August 1, 1958, Mr. Shapiro wrote a letter to relator in which he said: "I know I have promised you during the past two years that I hoped to find some way to pay you my obligation of $10,000.00."

The record shows that Mr. Shapiro by words and conduct directed the transfer of said stock to the relator and thereafter acquiesced in and consented to the means of the transfer. There is nothing in the record to show that claim was ever made thereafter by Mr. Shapiro that he was the owner of said stock.

■ It must be observed that Mr. Shapiro had the full right and authority to sell, assign, pledge or hypothecate or otherwise use or dispose of this stock in the corporation without restriction or restraint. A stockholder has a perfect ownership over his stock and may sell and trans-

fer it to whomever he pleases. *Brightwell v. Mallory,* 18 Tenn. 196; *Herring v. Ruskin Coop. Ass'n.,* Tenn.Ch. App., 52 S.W. 327. The defendant corporation was bound and obligated to honor his act or acts in regard thereto.

All dividends on said stock have been paid directly to Lowell Wiper Supply Company since August 21, 1957 as shown by dividend checks appearing in the record. A copy of the stock record book of April 1, 1960 shows that 400 shares of the common and 400 shares of the preferred stock of Helen Shop, Inc., is registered in the name of Lowell Wiper Supply Company.

The appellant in its original answer stated:

"That, following its (Lowell Wiper Supply Company) such acquisition of that stock formerly owned or controlled by Elias Shapiro said stock was presented to the corporation for transfer and was placed in the name of complainant on or about said August 21, 1957. That defendants are not advised whether such purported transfer to complainant of such stock for such antecedent debt was bona fide or not, and they are not advised whether such stock is actually the property of complainant or is still owned or controlled by Elias Shapiro, who is reputed to be insolvent."

From the foregoing, it is obvious that the appellants recognized and treated the relator as the owner of said stock. It cannot now be heard to say to the contrary.

"Generally, where a corporation registers a person as a holder of shares, and gives him certificates for them, it will be estopped from denying his title to them * * *." 13 American Jurisprudence, Corporations, Sec. 409, page 464.

114

· The Chancellor in his memorandum opinion found that the relator is the

"legal and equitable title holder to the shares of stock involved, and no longer has the status of a mere pledgee; that the pledgor has made no complaint about this transfer and has not attempted to invalidate it, but has rather acquiesced in and consented to.

"Therefore, the relator, as the legal shareholder of record, has the unquestioned right to inspect the corporate books and records" (of the appellant).

■ There is no longer any doubt that the transfer and assignment of certificates of stock in a corporation, either by absolute sale or by way of pledge or security for debt, passes to the vendee or pledgee the title thereto. *Cornick v. Richards,* 71 Tenn. (3 Lea) 1, 25; *Cherry v. Frost,* 75 Tenn. (7 Lea) 1 and several other cases.

■ In the case of *Smith v. Railroad,* 91 Tenn. 221, 238, 18 S.W. 546, 549, the Court said:

"The rule requiring transfer on the books of the company by the well-settled line of decisions in this state, and by the great weight of authority in the courts of America, is a rule made solely for the benefit of the company. By it the company is enabled to know who are entitled to vote, and to whom it may pay dividends."

Both of the rules stated above are supported by the case of *Parker v. Bethel Hotel Company,* 96 Tenn. 254, 34 S.W. 209, 31 L.R.A. 706.

■ Then again in the case of *Rose v. Parker,* 36 Tenn.App. 46, 53, 251 S.W.2d 320, the authorities on the subject were reviewed and the Court said:

"The title of the purchaser upon the assignment of the certificate was complete without registration or transfer on stock-books of the corporation. * * *.

"* * * a complete equitable and legal title is passed by the act of the owner in assigning a certificate of stock and * * * a subsequent registration of the assignment and issuance of a new certificate in no way affects the rights of the immediate parties.

"It is clear, therefore, from our decisions that as between the parties thereto the completion of a sale or a gift cannot be made to depend upon entries on the books of a corporation where its shares of stock are involved. Title in this jurisdiction goes with the certificate."

The case of *Figures v. Sherrell,* 181 Tenn. 87, 93, 178 S.W.2d 629, 152 A.L.R. 420, served as authority for the holdings set out in *Rose v. Parker,* supra.

█ We think, therefore, that the Chancellor was correct in holding that the relator is the legal owner of the shares of stock mentioned in the pleading and has all the rights and privileges of any other ordinary stockholder.

█ It is next insisted that the stock was transferred to the relator without permission of Mr. Shapiro and in violation of the collateral agreement. It is significant to note that Mr. Shapiro raises no complaint about this transfer, and as the Chancellor held he has consented to and acquiesced in such transfer. The Company has no standing to complain. In the absence of an agreement it has no control over the sale or pledge of the stock by one of its stockholders.

■ Mr. Feinberg testified that he had been directed by Mr. Shapiro to "take possession of the stock and have it transferred." Objection is made, on appeal, that this testimony was inadmissible. It may have been, but no objection was made to this testimony at the time offered or at the hearing.

It is a general rule of law that unless objection to the competency of evidence is made at the time such evidence is offered at the hearing, it is waived and such evidence may not be objected to on appeal. *Erwin National Bank et al. v. Riddle et al.,* 18 Tenn.App. 561, 79 S.W.2d 1032.

■ The appellants contend that the relator has no right to inspect corporate records during the period Elias Shapiro was part of the corporate defendant's management or prior to the date on which complainant caused the stock to be registered in its name.

In the case of *McCampbell v. Fountain Head Railroad Company, et al.,* 111 Tenn. 55, 75, 77 S.W. 1070, 1075, it was held:

"A purchaser of shares acquires no greater rights than the prior holder. If a violation of the corporate rights is acquiesced in by all the other holders of stock, the action becomes extinguished thereby, and no other holders, present or future, would be entitled to complain. * * * A shareholder who has acquired his shares after an unauthorized transaction had taken place certainly cannot place his complaint on the ground that he has suffered a wrong, or that his equitable rights have been infringed."

Again in the case of *Uffelman et al. v. Boillin et al.,* 19 Tenn.App. 1, 42, 82 S.W.2d 545, the Court said: "A

purchaser of shares in a corporation acquires no greater rights than his vendor, and if his vendor had, with knowledge, acquiesced in a violation of corporate rights he (the purchaser) cannot complain."

██ If the appellant has been guilty of any acts detrimental to or adverse to its stockholders (and there is no indication in the record that it has been so guilty or that Elias Shapiro has acquiesced in such acts, if any) the Chancellor, upon the remand, in seeing that his order of inspection is carried out within reasonable bounds under the circumstances, will take this into consideration.

In 13 American Jurisprudence at page 485 under Section 437 it is said:

"The right of a stockholder to inspect the books of the corporation * * * extends * * * to all papers, contracts, books, or other instruments from which he can derive any information which will enable him better to protect his interests and perform his duties as a stockholder."

In Fletcher's Cyclopedia on Corporations at page 752 of Volume 5 at Section 2214 it is said:

"The rule at common law, stated in general terms, is that every stockholder of a private corporation has the right, by reason of his interest therein, to inspect and examine the books and papers of the corporation at reasonable times and places and for proper purposes.

██ ██ It is true that Section 48-308 T.C.A. provides for the inspection by stockholders of the stock books but this right is not limited in character nor exclusive in nature and it does not take away from a stockholder the right given him by common law, to make a reasonable

inspection when it is sought in good faith for a specific and honest purpose and not merely to gratify curiosity or for speculative or vexatious purposes. Such an inspection has to be germane to his interest as a stockholder and has to be proper and lawful in character and not inimical to the interest of the corporation and further the inspection has to be made during reasonable hours.

 It is the general rule of the common law that the purpose and motive of stockholders are proper matters for inquiry and consideration by the Courts in proceedings brought by stockholders to enforce their rights of inspection.

We believe that the Chancellor reached the correct decision in issuing the mandatory writ. We are confident that he will exercise reasonable care in seeing that the writ is complied with on a reasonable basis without injury or harm to the appellant in carrying on its usual business operation and further that the rights of the relator as a stockholder are reasonably protected.

Therefore, all assignments of error are overruled and this cause is remanded for further proceedings not inconsistent with this opinion. The appellant will pay the cost of this appeal.

### On Petition to Rehear

The petition to rehear contends, in effect, that we should modify the order of the Chancellor so as to specifically limit the inspection of the records of Helen Shop, Inc., and that we should hold that relator's motivation for said inspection is not for "a specific and honest purpose". It was not our intention to so hold in the original opinion for the reason that the record does not

support such a conclusion. The relator and Helen Shop, Inc. are not competitors in business. There is no indication whatever that information is being sought by the relator for an illegal or dishonest purpose.

██ ██ It has been said, and properly so, that those in charge of the affairs of a corporation are merely the agents of its stockholders and as such agents they are required to exercise good faith in discharging the duties of their office. They are also required to submit the books and papers of the corporation, which are, in effect, common property of the stockholders, to them for examination at reasonable times and places and upon reasonable demand properly made as more specifically set out in our original opinion.

We are confident that the Chancellor will see that his order is carried out with proper consideration for the rights, duties and responsibilities of all parties.

In our original opinion we gave full consideration to all the assignments of error. The petition to rehear has not presented any new argument or new authority nor does it suggest that we overlooked any material fact. See Rule 32 of this Court.

██ A petition for rehearing should never be used merely for the purpose of re-arguing the case on points already considered and determined, unless some new and decisive authority has been discovered, which was overlooked by the Court. The office of a petition to rehear is to call the attention of the Court to matters overlooked, not to those things which counsel supposes were improperly decided after full consideration. (*Louisville & N. Railroad v. Fidelity & Guaranty Co.*, 125 Tenn. 658, 691-693, 148 S.W. 671). *Gulf, M. & O. R. Co. v. Under-*

*wood,* 182 Tenn. 467, 476, 187 S.W.2d 777; *Memphis St. Ry. Co. v. Cooper,* 203 Tenn. 425, 437-439, 313 S.W.2d 444; *Oliver v. State,* 208 Tenn. 692, 698, 348 S.W.2d 325; Rule 32, 209 Tenn. 806, 807.

The petition to rehear is, therefore, denied.