LOWELL WIPER SUPPLY CO., Charlotte S. Feinberg, and Doris Ashapa, Plaintiffs,

v.

The HELEN SHOP, INC., John J. Blesch, Veronica Berman, M. James Spitzer, Veronica Berman and John J. Blesch, as Executors under the Last Will and Testament of Sidney Berman, Deceased, and Spitzer & Feldman, a Partnership, Defendants.

United States District Court
S. D. New York.

Nov. 2, 1964.

Golden, Wienshienk, Rosenthal & Mandel, New York City, for plaintiffs, Albert J. Rosenthal, Ralph Wienshienk, Simon Eilenberg, New York City, of counsel.

Spitzer & Feldman, New York City, for defendants.

WEINFELD, District Judge.

This is essentially a stockholders' derivative action with jurisdiction based upon diverse citizenship. The Helen Shop, Inc., for whose benefit the action is brought, is a Tennessee corporation. The two individual plaintiffs are citizens of Massachusetts, and the third plaintiff, Lowell Wiper Supply Co., is a Massachusetts corporation. All the defendants are citizens of the State of New York. Sidney Berman, the dominant and controlling stockholder of The Helen Shop, Inc., who died in 1959, was also a citizen of New York, as are his executors who are named as defendants.

The defendants move pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure to dismiss the First, Second and Sixth causes of action on the ground that the plaintiffs were not stockholders at the time of the transactions complained of, and upon the further ground that the claims are barred by the applicable statute of limitations. Dismissal is also sought of the Third cause of action upon the ground that the issues presented thereunder were considered by the courts of Tennessee and decided adversely to the plaintiffs. The parties have submitted affidavits as permitted under Rule 12(b) (6) and the motion is treated as one for summary judgment.

## THE FIRST AND SECOND CAUSES OF ACTION

The principal claims center about certain primary leases of property in Memphis, Tennessee, where The Helen Shop, Inc. has conducted its business since 1945. The essence of the charge is that Berman, who was the promoter and the chief executive officer of the corporation until his death, in conspiracy with other defendant stockholders, directors and officers, improperly availed himself of a corporate opportunity. In substance, the complaint alleges that the primary leases were taken by Berman, as lessee, who then sublet the premises to The Helen

Shop, Inc., as tenant, and upon expiration renewed them at excessive rentals, thereby profiting over a period of years in breach of his fiduciary duty to the corporation.

In the first cause of action the claim is that under the law of Tennessee the subleases between Berman, as a fiduciary, and the corporation are void and recovery is sought of all the rentals paid to him. In the second cause of action the claim is that under the law of Tennessee the subleases are voidable and recovery is sought of the excess of the fair rental value of the premises. The complaint further alleges that John J. Blesch, another officer and director, in each year received ten per cent of the alleged excessive rentals in furtherance of the conspiratorial purpose and to induce him to violate his fiduciary duty to attack the subleases. The complaint omits dates and other relevant information, but the extensive affidavits submitted by the parties in support of and in opposition to the motion reveal the following:

In April 1944 Berman leased premises in Memphis, Tennessee, and purchased a specialty shop which the landlord had conducted on the premises. This lease was for ten years, to August 1954, with two ten-year renewal options. He operated the business as sole proprietor until February 1, 1945, when he sold and transferred it and its assets to The Helen Shop, Inc., which he had caused to be incorporated shortly before. He also sublet the premises to the corporation for a term of ten years. In consideration of the transaction, he received corporate stock. In 1946, Berman individually obtained a lease of the adjacent property and in turn sublet it to The Helen Shop, Inc. for a term ending August 1954, so that both subleases expired on the same

date. The primary leases to Berman were at fixed dollar rentals, whereas the subleases from him to the corporation were on a percentage of net sales.

None of the plaintiffs was a stockholder of the corporation when it entered into the subleases. Plaintiff Feinberg became a shareholder in 1947 and plaintiff Ashapa in 1952. Lowell Wiper Supply Co., the corporate plaintiff, was not registered as the owner of stock until 1957, although it was a pledgee of the stock as collateral for a loan which it made in October, 1953.

Rule 23(b) of the Federal Rules of Civil Procedure provides that in a derivative suit the plaintiff must allege he was "a shareholder at the time of the transaction of which he complains * * *."[1] The plaintiffs, recognizing the force of the rule, disavow they are asserting any claims based on the 1945 and 1946 subleases entered into before they became stockholders, although they allege that the corporation was overreached in those transactions. What they do charge is that the corporation was again overreached by Berman, aided by his alleged co-conspirators, in entirely independent transactions, on August 14, 1954 when, upon the expiration of the subleases they were renewed for ten-year terms at allegedly exorbitant rentals greatly in excess of those paid by Berman under his primary leases.[2] Even as so restricted to the August 1954 renewals, the defendants contend that all three plaintiffs then lacked contemporaneous ownership and hence this action must fall. They do not dispute the standing under Rule 23(b) of the two individual plaintiffs who were stockholders of record when the subleases were renewed in August 1954; they do, however, challenge the right of the corporate plaintiff to join with them to

---

1. Both New York and Tennessee have similar requirements. N. Y. Business Corporation Law, McKinney's Consol. Laws, c. 4, § 626(b) (succeeding General Corporation Law, McKinney's Consol Laws c. 23, § 61) ; see State ex rel. Lowell Wiper Supply Co. v. Helen Shop, Inc., 211 Tenn. 107, 362 S.W.2d 787, 791 (1962).

2. A further extension was entered into with the estate of Berman on July 1, 1963, which also is attacked by plaintiffs in a separate cause of action, but the present motion is not directed thereto.

prosecute this suit since it did not become a stockholder of record until 1957.

■ Whether the corporate plaintiff has the necessary status to maintain this action under Rule 23(b) must be determined by the law of Tennessee, the state of incorporation of The Helen Shop, Inc.[3] The rule in Tennessee is that "the transfer and assignment of certificates of stock in a corporation, either by absolute sale or by way of pledge or security for debt, passes to the vendee or pledgee the title thereto." [4] In 1953 the corporate plaintiff had loaned $50,000 to one Shapiro who, as collateral security, pledged 350 shares of preferred stock of The Helen Shop, Inc. which were deposited with his attorney as escrow holder. In September 1954 physical possession of the certificates so pledged, as well as certificates for additional shares, were delivered to the corporate plaintiff when a demand note was substituted for Shapiro's matured note and the arrangement formalized. While it is true that the actual delivery of the certificates was not made until September 1954, one month after the sublease renewals, the fact is that the corporate plaintiff had been the pledgee of 350 shares since the 1953 loan transaction and was still the pledgee when the renewal lease was executed in August 1954. It is clear, therefore, that under the law of Tennessee it held title from the time the shares were first pledged; indeed, such was the holding of the Tennessee courts in a proceeding involving these very litigants.[5] Accordingly the corporate plaintiff also possesses the necessary status under Rule 23(b) to maintain the first and second causes of action directed against the 1954 renewal of the subleases.

Thus the issue on defendants' motion is narrowed to their contention that these causes of action are barred by the applicable statute of limitations.[6] The defendants assert that the claims accrued on August 14, 1954, when the subleases were entered into and this action having been commenced in August 1963, more than nine years thereafter, they are time-barred since the limitation statute most favorable to plaintiffs is six years. On the other hand, the plaintiffs contend that the alleged excessive rental payments under the 1954 subleases were continuing wrongs, each payment representing a separate wrong so that, as stated by them, they are "entitled to secure relief for those transactions which have occurred" within the applicable limitation period, whether it be six or three years. They make the further contention that the defendants are estopped from raising any limitation defense by reason of their misstatements of fact and concealment of the corporate transactions here under attack.

■ Whether these causes of action, involving as they do the internal affairs of a Tennessee corporation and arising there, are time-barred must be determined in accord with the body of law which would be applied by New York, the forum state in this diversity suit.[7]

3. Gallup v. Caldwell, 120 F.2d 90, 93 (3rd Cir. 1941); Milvy v. Adams, 16 F.R.D. 105, 108 (S.D.N.Y.), remanded with leave to amend, 217 F.2d 647 (2d Cir. 1954); Bankers Nat'l Corp. v. Barr, 7 F.R.D. 305, 307 (S.D.N.Y.1945). See Hausman v. Buckley, 299 F.2d 696, 703, 93 A.L.R. 2d 1340 (2d Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962).

4. State ex rel. Lowell Wiper Supply Co. v. Helen Shop, Inc., 211 Tenn. 107, 362 S.W. 2d 787, 790 (1962), and cases there cited.

5. State ex rel. Lowell Wiper Supply Co. v. Helen Shop, Inc., 211 Tenn. 107, 362 S.W.2d 787 (1962).

6. Though, as already mentioned, the first cause of action characterizes the subleases and their removal as void, while the second cause of action calls them voidable, this difference does not bear on the question of whether they are time-barred and may be disregarded. Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 193 F.Supp. 401, 406 (S.D.N.Y. 1961).

7. Wells v. Simonds Abrasive Co., 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211 (1953); Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). See Association for Preserv. of Freedom

Pursuant to New York's public policy of affording its resident-defendants the benefit of the shortest applicable period of limitation, New York would apply its "borrowing statute" and bar this suit if the limitation period had run either here or in Tennessee.[8] Relevant to this determination are not only the statutory period itself, but "all its accouterments," including tolling doctrines and rules governing accrual of causes of action.[9] The defendants do not contend that Tennessee prescribes a shorter limitation period and acknowledge that New York is the more restrictive of the two jurisdictions. Accordingly we first consider whether these causes of action are barred under New York law.

■■ Our initial inquiry concerns the date on which the causes of action accrued, for that is when the statutory period begins to run.[10] Claims accrue in New York when the plaintiff first acquires the right to seek a judicial remedy.[11] Here, the corporation was wronged on August 22, 1954, when the subleases were renewed to its detriment and to the profit of one owing it a fiduciary's duty. On that date the corporation, and derivatively its shareholders, acquired the right to bring an action on the subleases, without regard to the date of discovery of the wrong or to the defendants' continued control of the corporation.[12] The courts of New York have consistently rejected the theory advanced by plaintiffs that each payment pursuant to a wrongful agreement gives rise to a separate and distinct claim, whether the theory was invoked to establish capacity of a shareholder to sue [13] or to overcome the bar of a statute of limitations.[14] The continued payments merely reflect the damages sustained by the party wronged. This conclusion is bolstered by the fact that the complaint alleges a conspiracy. The settled rule in civil conspiracies is that the statute of limitations begins to run upon commission of the overt act causing damage.[15] Here, such an act was the renewal of the subleases in August of 1954.

We next consider the applicable limitation period. Prior to September 1, 1963, when the new Civil Practice Law and Rules (CPLR) took effect in New York,

of Choice v. Simon, 299 F.2d 212, 214–215 (2d Cir. 1962). Cf. Hausman v. Buckley, 299 F.2d 697, 701, 93 A.L.R.2d 1340 (2d Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962).

8. N.Y. CPLR § 202 (replacing N.Y. Civil Practice Act, § 13). The constitutionality of such discrimination against out-of-state plaintiffs has been sustained. Canadian Northern Ry. v. Eggen, 252 U.S. 553, 40 S.Ct. 402, 64 L.Ed. 713 (1920). For criticism see Currie & Schreter, Unconstitutional Discrimination in the Conflict of Laws: Privileges and Immunities, 69 Yale L.J. 1323, 1387–89 (1960).

9. Nolan v. Transocean Air Lines, 276 F.2d 280, 283 (2d Cir. 1960), vacated on other grounds, 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961) (applying New York choice of law rules); American Surety Co. of N. Y. v. Gainfort, 219 F.2d 111, 112 (2d Cir. 1955); Sylvania Elec. Prods., Inc. v. Barker, 228 F.2d 842 (1st Cir. 1955), cert. denied, 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 854 (1956); Austrian v. Williams, 198 F.2d 697, 701 (2d Cir.), cert. denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952).

10. CPLR § 203(a) (replacing the more explicit Civil Practice Act, § 11).

11. See Civil Practice Act, § 11; Cary v. Koerner, 200 N.Y. 253, 93 N.E. 979 (1910).

12. Hastings v. H. M. Byllesby & Co., 293 N.Y. 404, 57 N.E.2d 733 (1944); Pollack v. Warner Bros. Pictures, Inc., 266 App.Div. 118, 41 N.Y.S.2d 225 (1st Dep't. 1943). See Austrian v. Williams, 198 F.2d 697, 700 (2d Cir.), cert. denied, 244 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952).

13. Chaft v. Kass, 241 N.Y.S.2d 284, 19 A.D.2d 610 (1st Dep't. 1963); Weinstein v. Behn, 65 N.Y.S.2d 536 (Sup.Ct.1946), aff'd, 272 App.Div. 1045, 75 N.Y.S.2d 284 (1st Dep't. 1947).

14. Weinstein v. Behn, supra, 65 N.Y.S.2d at p. 544.

15. E.g., Baldwin v. Loew's Inc., 312 F.2d 387 (7th Cir. 1963); Momand v. Universal Film Exchanges, Inc., 172 F.2d 37, 49 (1st Cir. 1948); Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 193 F.Supp. 401, 405–406 (S.D.N.Y.1961).

the period of limitation in derivative actions depended on whether "unjust enrichment" or "waste" was claimed. In "unjust enrichment" cases the limitation period was six years from the date of accrual;[16] in suits alleging "waste," the period was three years from the date of accrual.[17] The plaintiffs contend that the defendant Blesch, individually, and the executors of the estate of Sidney Berman, are chargeable with unjust enrichment for the excessive rentals paid under the subleases, and, accordingly, that the limitation period is six years. The validity of this contention as to Blesch and another individual defendant is disputed by the defendants; however, the issue need not be resolved since for the purposes of this motion the end result is the same. As has already been shown, the cause of action arising out of the renewal of the subleases accrued on August 14, 1954; this action was not commenced until August 22, 1963, more than nine years later.[18] Thus, except for the plaintiffs' claim that the defendants are estopped from interposing the statute of limitations—to be discussed presently —the first two causes of action were already barred when this action was begun, whether the applicable period was three or six years, even with the addition pursuant to Civil Practice Act, § 21 of eighteen months by reason of Berman's death in April, 1959.

This result is not changed by the new CPLR for section 218 thereof declares that nothing contained in the article governing limitations shall authorize commencement of an action barred when the article becomes effective, except in circumstances not here present.

We next pass to the plaintiffs' contention that the defendants are estopped to avail themselves of the limitation bar by reason of their conduct which allegedly precluded timely commencement of suit.

In advocating this position the plaintiffs disclaim any challenge to the existing New York doctrine, already referred to, that the period of limitation in a stockholders' derivative suit commences to run from the date of the perpetration of the wrong and not from the date of its discovery, notwithstanding continued domination by the allegedly recreant fiduciaries—a doctrine characterized as "out of line" with that prevailing in many states and one which seems "harsh and inequitable."[19]

The plaintiffs also disavow contending that the statutory period for claims grounded on common law fraud, which begins to run only from discovery, is applicable to this derivative suit.[20]

What they do press is a plea of equitable estoppel, an application of the well settled principle that "no man may take advantage of his own wrong."[21] This doctrine has been applied by New York courts to deny the defense of the statute of limitations to a fiduciary whose wrongful conduct has prevented the timely commencement of suit,[22] although

16. Civil Practice Act, § 48(8).

17. Civil Practice Act, § 49(7); Kalmanash v. Smith, 291 N.Y. 142, 159, 51 N.E.2d 681 (1943).

18. In the instance of some defendants the action was not commenced until September 17, 1963. The parties appear to agree that the difference in the dates of service of process, in terms of the issues in this case, is of no consequence.

19. Frank, J. in Rieser v. Baltimore & Ohio R. R., 228 F.2d 563, 565 n. 4 (2d Cir. 1955), cert. denied, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956).

20. Civil Practice Act, § 48(5), now CPLR § 206(c). See Lever v. Guaranty Trust Co., 262 App.Div. 1044, 30 N.Y.S.2d 532 (2d Dep't 1941), aff'd, 289 N.Y. 615, 43 N.E.2d 837 (1942); American Cities Power & Light Corp. v. Williams, 189 Misc. 829, 69 N.Y.S.2d 197 (Sup.Ct.1947). Cf. Rieser v. Baltimore & Ohio R. R., supra.

21. Glus v. Brooklyn Eastern Dist. Term., 359 U.S. 231, 232, 79 S.Ct. 760, 3 L.Ed. 2d 770 (1959).

22. E.g., Erbe v. Lincoln Rochester Trust Co., 13 A.D.2d 211, 214 N.Y.S.2d 849 (1st Dep't 1961), appeal dismissed, 11 N.Y.2d 754, 226 N.Y.S.2d 692, 181 N.E.2d 629 (1962).

it must be acknowledged that the outer limits of the estoppel plea have not been sharply defined.[23]

Plaintiffs argue in effect that the defendants, as controlling directors and officers of The Helen Shop, Inc., to prevent detection of their alleged misconduct, concealed material facts, furnished misleading financial statements, denied plaintiffs their legal right of access to corporate books and records, compelled them to institute proceedings in the courts of Tennessee to vindicate that right, and engaged in deliberate delaying tactics and unwarranted appeals so that four years passed before the Tennessee courts finally upheld their right as shareholders to examine the corporate records. The inspection for the first time fully revealed the facts upon which this suit is based, but by then the statute of limitations had already run against the causes of action related to the 1954 sublease renewals.

Defendants counter with the argument that, even before the court-compelled inspection, plaintiffs in litigation instituted in 1959 had made charges substantially parallel to those in the instant suit, indicating they then had knowledge of material facts relating to the 1954 renewals sufficient to have permitted them to have instituted timely suit.

In reply plaintiffs say they then only suspected wrongdoing and it was not until their right to inspection was upheld that their suspicions were confirmed.

Whatever the fact, the sharply disputed contentions present a triable issue whether the alleged non-disclosure, concealment, affirmative misrepresentations, and delaying tactics compel a court of equity, under established New York doctrine of estoppel, to deny the defendants the defense of the statute of limitations. If this issue, which necessarily includes consideration of the extent of plaintiffs' knowledge and the date of its acquisition, is resolved upon a trial against plaintiffs, then under the present ruling the first two causes of action must be dismissed as time-barred.[24]

## THE SIXTH CAUSE OF ACTION

The sixth cause of action, which is also attacked on the same grounds as are the first and second, alleges that upon the organization of the corporation in 1945, the then incumbent directors, including Blesch, caused it improperly to issue 3,430 shares of common stock to Berman and 300 shares of common stock to Blesch for which no consideration was ever received by the corporation. As already shown, one of the individual plaintiffs became a stockholder in 1947 and the other in 1952, and the corporate

23. The estoppel doctrine is conventionally directed to cases in which the defendant's representations have caused the plaintiff to abstain from presenting a known cause of action until the statute has run, while the "fraudulent concealment" doctrine governs cases in which the defendant by affirmative act has concealed the very existence of a cause of action. Compare Dawson, Estoppel and Statutes of Limitations, 34 Mich.L.Rev. 1 (1935), with Dawson, Fraudulent Concealment and Statutes of Limitations, 31 Mich.L.Rev. 875 (1933).

It does not appear, however, that New York courts observe these somewhat arbitrary distinctions, for in Erbe v. Lincoln Rochester Trust Co., supra, "estoppel" language was applied to toll the statute of limitations where a fiduciary had concealed the fact of his wrongdoings. Cf. Glover v. National Bank of Commerce, 156 App.Div. 247, 141 N.Y.S.

409 (1st Dep't 1913) (dictum on fraudulent concealment); Rank Organization Ltd. v. Pathe Labs., Inc., 33 Misc.2d 748, 227 N.Y.S.2d 562 (Sup.Ct.1962) (equitable estoppel).

24. If these causes of action are not barred in New York, they would seem a fortiori to be suable in Tennessee. Although Tennessee would apply a similar six-year statute of limitations, Tenn.Code Ann. § 28–309, and would not subscribe to the continuing wrong theory advocated here by plaintiffs, it seems readier to toll for fraudulent concealment than does New York. See Union Carbide & Carbon Corp. v. Stapleton, 237 F.2d 229, 233, 69 A.L.R.2d 1206 (6th Cir. 1956) (applying Tennessee law). Furthermore, the individual defendants may come within the tolling provisions of Tenn.Code Ann. § 28–112, applicable to non-resident defendants.

plaintiff did not become the pledgee of stock until 1953. Since none was a stockholder when the transaction which is the basis of the sixth cause of action was consummated, under Rule 23 of the Federal Rules of Civil Procedure they lack legal capacity to maintain this action.[25]

The attempt to overcome this defect by allegations that dividends were paid on the stock so issued to Berman and Blesch at various dates subsequent to the time plaintiffs became stockholders, and that the value of plaintiffs' shares will suffer diminution upon distribution of assets is futile. It again seeks to apply the rejected doctrine of continuing wrong on the theory that each payment of a dividend gives rise to an individual claim. In this instance, as in that of the excess lease rentals, the wrong, if any, occurred upon the original issuance of the stock in 1945, two years before any of the plaintiffs became a stockholder. The motion to dismiss the sixth cause of action is granted. This disposition makes it unnecessary to consider the statute of limitations question.

### THE THIRD CAUSE OF ACTION

■ The defendants also move to dismiss the third cause of action on the ground that the issues raised therein have been determined adversely to the plaintiffs' contentions by the courts of Tennessee. Here the plaintiffs seek restitution to the corporation by the defendants, including the corporation's attorneys, of all expenses incurred by it in contesting the Tennessee litigation brought by Lowell Wiper Supply Company. The gist of the claim is that the opposition to this stockholder effort to gain access to the corporate books and records was pursuant to a conspiracy of the defendants purely obstructive and not in the furtherance of the corporate interests. The adjudication by the Tennessee courts on which the motion to dismiss this cause of action is predicated is the denial of recovery of the Tennessee statutory penalty for refusal or neglect to exhibit the stock book. However, the proceeding brought by Lowell Wiper Supply Company sought examination not only of the stock book but of all corporate books and records as well as all leases entered into by The Helen Shop, Inc. While the statutory penalty for refusal to permit inspection of the stock book was disallowed, the general inspection prayed for was granted.[26] Thus the only adjudication on which the defense of res judicata is founded is clearly not a decision adverse to the plaintiffs on the basic right to inspect the corporate records asserted by them in Tennessee. A defense of res judicata is not made out and the motion to dismiss the third cause of action is denied.

### SECURITY FOR COSTS

■ The defendants move alternatively for security for costs pursuant to section 627 of the New York Business Corporation Law. Each of the individual stockholders, at the time of the 1954 renewal of the subleases, held 50 shares and the corporate plaintiff as pledgee held 350 shares of the preferred stock— or a total of 450 shares of stock of this class. There were 7,000 shares of preferred stock outstanding; the plaintiffs, collectively, thus owned more than 5% of the outstanding preferred stock. Under the New York statute they are not required to give security and that branch of the motion is accordingly denied.

In conclusion, the defendants' motion for summary judgment on the first, second and third causes of action is denied; it is granted as to the sixth cause of action. Examination of the defendant as to the matters in issue under existing claims may proceed upon a date to be fixed in the order to be entered herein.

Settle order upon notice.

25. McQuillen v. National Cash Register Co., 27 F.Supp. 639 (D.Md.1938), aff'd, 112 F.2d 877 (4th Cir.), cert. denied, 311 U.S. 695, 61 S.Ct. 140, 85 L.Ed. 450 (1940).

26. State ex rel. Lowell Wiper Supply Co. v. Helen Shop, Inc., 211 Tenn. 107, 362 S.W.2d 787 (1962).