**J. Ralph SAYLOR, Plaintiff,**

**v.**

**Thayer LINDSLEY et al., Defendants.**

**No. 65 Civ. 516.**

United States District Court
S. D. New York.
April 16, 1969.

Abraham I. Markowitz, New York City, for plaintiff.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for defendants Thayer Lindsley, Gordon D. Stott, George W. Tower, Paul W. Zeckhausen, Northfield Mines, Inc. & Mines, Inc.; Herbert J. Jacobi, New York City, of counsel.

Pollack, Greenspoon & Singer, New York City, for defendant Tonopah Mining Co. of Nevada; Daniel A. Pollack, New York City, of counsel.

## OPINION

COOPER, District Judge.

On February 18, 1965 plaintiff Saylor, a stockholder of Tonopah Mining Company of Nevada (Tonopah), commenced this derivative action on behalf of his corporation against several of its directors as well as certain corporations allegedly affiliated with Tonopah or under the control of its directors. Jurisdiction is based upon federal statutes[1] and the doctrine of pendant jurisdiction, with no allegation of diversity of citizenship.

The complaint is based upon the sale and transfer by Tonopah to Mines Incorporated (Mines), in 1951 of 60%, and in 1953 of the remaining 40% of the stock of a subsidiary, Tonopah Nicaragua Company (Tonopah Nicaragua) the principal asset of which was a copper

---

1. Investment Company Act of 1940, 15. U.S.C. § 80a-1 et seq.; Securities Act of 1933, 15 U.S.C. § 77a et seq.; Se-curities Exchange Act of 1934, 15 U.S.C. § 78a et seq. and 17 C.F.R. § 240.10b-5.

mine located in Nicaragua (the Rosita Mine), and the subsequent transfer in 1955 of the Rosita Mine to Rosita Mines Ltd., a wholly-owned subsidiary of LaLuz Mines Ltd. (LaLuz). It alleges that both during and since these transactions the seller Tonopah, the buyer Mines, and the eventual transferee LaLuz, were all under defendants' domination and control; that the sale of Tonopah Nicaragua stock to Mines was effected at less than a fair consideration; that defendants conspired to invest ownership of the Rosita Mine in Rosita Mines Ltd., the wholly-owned LaLuz subsidiary, for the personal benefit of certain of the defendants; and that in furtherance of the conspiracy, information pertaining to the true extent and value of the copper reserves at the Rosita Mine and concerning which defendants were aware, was concealed from, and certain other facts misrepresented to, the stockholders of Tonopah.

It is alleged that these acts constitute violations of the Investment Company Act of 1940,[2] the Securities Act of 1933,[3] the Securities Exchange Act of 1934[4] and the rules and regulations thereunder,[5] and a waste and apoliation of the Tonopah assets and a breach of fiduciary duty on the part of the defendant directors of Tonopah.

By way of relief, the complaint demands a judgment (1) voiding the sales and transfers of Tonopah Nicaragua stock; (2) rescinding such sales of stock; (3) declaring the stock and assets of Tonopah Nicaragua to be the property of Tonopah and impressing a trust thereon; (4) requiring that all stock and as-

sets of Tonopah Nicaragua subject to the control of defendants be reconveyed to Tonopah; (5) requiring LaLuz to turn over to Tonopah the stock of Rosita Mines Ltd.; (6) requiring defendants to account to Tonopah for damages and profits; and (7) enjoining further transfers by defendants of Tonopah Nicaragua stock or Tonopah assets.

Certain defendants moved for summary judgment on the ground of *res judicata* and, alternatively, on the ground that the suit was barred by the applicable statute of limitations. Defendant Tonopah moved in the alternative for an order requiring plaintiff to post security for the reasonable expenses which Tonopah may incur in connection with this suit. This Court granted defendants' motion for summary judgment holding that dismissal[6] of a prior stockholders derivative suit instituted in 1957 in this District by one Hawkins and involving the same operative facts as the Saylor complaint constituted *res judicata* as to Saylor's claims. See Saylor v. Lindsley, 274 F.Supp. 253 (S.D.N.Y.1967). That judgment was reversed on the ground that the dismissal in *Hawkins* was not on the merits, and remanded to us for consideration of defendants' contention that the statute of limitations has run. Saylor v. Lindsley, 391 F.2d 965 (2d Cir. 1968).

Plaintiff's contention that this Court disposed of defendants' motion for summary judgment *in toto* by virtue of our order granting defendant summary judgment on the ground of *res judicata* is without merit.[7] Plaintiff's allegation

---

2. 15 U.S.C. § 80a–1(b) (1), (2), (4); § 80a–33(b); § 80a–35; § 80a–36; § 80a–46(b).

3. 15 U.S.C. § 77q.

4. 15 U.S.C. §§ 78j(b) and 78cc(b).

5. 17 C.F.R. § 240.10b–5.

6. Hawkins v. Lindsley, 327 F.2d 356 (2d Cir. 1961).

7. With regard to the statute of limitations issue, we stated in our previous opinion herein:

"Having granted summary judgment upon the grounds that the prior litigation was *res judicata*, it is unnecessary to determine whether, as defendants contend, the statute of limitations has run. We do not reach the question of whether the statute has been tolled by various actions. This issue, raising novel questions concerning the application of federal law, should not be reached unless necessary." 274 F.Supp. at 256.

This Court, having been reversed in its decision to grant summary judgment on

in support thereof that factual issues must be resolved before the statute of limitations issue can be determined will, of course, be considered in connection with plaintiff's defenses to defendants' motion for summary judgment.[8] General Rule 34 of the Local Court Rules requires that further proceedings be referred to the same Judge, after remand by an Appellate Court, when "further proceedings not requiring the trial of an issue of fact are appropriate."

Defendants' motion for summary judgment on the ground the statute of limitations has run is properly still before us, since only in the absence of factual issues could defendant be entitled to summary judgment. See Rule 56, F.R.Civ.P. Thus, upon defendants' moving papers renewing their motion for summary judgment on the ground the statute of limitations has run (without the need for the filing of a new motion), we proceed to a consideration of the issues.

### I Statute of Limitations
#### A. Federal claims
##### 1. The applicable period

We consider initially whether the statute of limitations presents a bar to plaintiff's federal claims. None of the federal statutory provisions allegedly violated by defendants contain a statute of limitations applicable to civil actions for violations thereof; nor is there any general federal statute of limitations applicable to civil actions based upon federal statutes. In such instances where Congress creates a federal right but does not prescribe a period for its enforcement, the federal court will "borrow" the statute of limitations applicable under the law of the forum state. See Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340,

91 L.Ed. 1602 (1947); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941); Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80, 83, 90 A.L.R.2d 252 (2d Cir. 1961), cert. denied 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26.

Judge Friendly set forth in *Moviecolor* the standards to be followed and law to be consulted by a federal court faced with borrowing a state statute of limitations:

"[W]hen a state has established different periods of limitation for different types of action, a federal court enforcing a federally created claim looks first to federal law to determine the nature of the claim and then to state court interpretations of the statutory catalogue to see where the claim fits into the state scheme. * * * Similarly, a federal court will follow state decisions as to how far a cause of action must be 'complete' to have 'accrued' under state limitation statutes but will look to federal law to determine what needs be done to advance a federally created right to the level so required * * * ; it will look also to state decisions to determine where the cause of action accrued * * *." (citations omitted).

Defendants maintain the appropriate period to be six years, contending that the sale of Tonopah Nicaragua stock giving rise to the cause of action took place in Pennsylvania where Tonopah had its headquarters and principal place of business. See Zeckhausen Affidavit, paras. 5 and 9. Upon this they argue that plaintiff's cause of action arose, if at all, in Pennsylvania; and that, accordingly, Section 13 of the Civil Practice

---

the ground of *res judicata*, has still pending before it the alternative ground (not previously determined) of the statute of limitations.

**8.** It is clear that while factual issues may be present with regard to the running of the statute of limitations, neither this Court nor the Court of Appeals have

yet determined that to be the case. Both courts have indicated that *if* an amendment to the complaint were permitted a factual issue would then be created, and that this case *may* be an appropriate one for permitting such an amendment. See Saylor v. Lindsley, 274 F.Supp. 253, 256–257 (S.D.N.Y.1967), rev'd 391 F.2d 965, 970 (2d Cir. 1968).

Act,[9] New York's "borrowing statute," applies here.[10] See Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). If so, the shorter of the periods provided by New York and Pennsylvania as to actions such as the instant complaint would limit the time within which suit may be brought. In determining which is shorter we must consider not only the statutory period, but "all its accouterments," including tolling doctrines and rules governing accrual of causes of action. See Lowell Wiper Supply v. Helen Shop, Inc., 235 F.Supp. 640, 644 (S.D.N.Y.1964).

■ The applicable Pennsylvania period of limitations as to each of plaintiff's claims is six years. See 12 P.S.Pa. §§ 31 and 41. Where there is an affirmative independent act of concealment of the facts giving rise to the cause of action, and not mere silence or nondisclosure, the right of action does not accrue and the Pennsylvania statute of limitations does not begin to run until discovery, or until discovery could have been made, by the exercise of reasonable diligence. See Lutherland, Inc. v. Dahlen, 357 Pa. 143, 53 A.2d 143 (1947); Overfield v. Pennroad Corp., 146 F.2d 889 (3d Cir. 1945); Federal Deposit Insurance Corp. v. Ciaffoni, 176 Pa. Super. 91, 107 A.2d 211 (1954); American Auto Insurance Co. v. Rosamilia, 36 North. 102 (1965); Daugherty v. Theires, 26 D. & C.2d 517 (1963); Iacaponi v. New Amsterdam Casualty Co., 258 F.Supp. 880 (W.D.Pa.1966).

■■ New York also limits all claims, legal or equitable, against officers, directors or shareholders of a corporation to a period of six years.[11] See CPA § 48(8). See also, Augstein v. Levey, 3 A.D.2d 595, 162 N.Y.S.2d 269 (1st Dept. 1957), aff'd 4 N.Y.2d 791, 173 N.Y.S.2d 27, 149 N.E.2d 528 (1958). However, the statute begins to run from the time of the wrongdoing without regard to the date of discovery.[12] See CPA § 11. In view of the New York accrual rule, we

9. The CPA and not the CPLR is applicable since either the claims asserted, if barred, were barred before the CPLR became effective on September 1, 1963, or in any event, the periods of limitation under the CPA potentially applicable to the federal claims are as long as or longer than the periods provided for by the CPLR. See CPLR § 218.

10. Neither party has mentioned the qualification imposed upon New York's borrowing statute, whereby only the New York period is applicable if the cause of action originally accrued in favor of a New York resident. See CPA § 13. Similarly absent is an express declaration in any of the papers before us as to plaintiff Saylor's residency. The July 6, 1965 affidavit of Michael J. McLaughlin does suggest plaintiff is not a New York resident. We may so assume for the purposes of this decision.

11. CPA § 49(7) provides for a three year period of limitation, but with respect to stockholder derivative suits its application is limited solely to actions for waste of corporate assets. See CPA § 48(8). See also, Levy v. Berens, 120 N.Y.S.2d 56 (1953); Ripley v. International Railways, 276 App.Div. 1006, 95 N.Y.S.2d 871 (1950). The federal claims are not analogous to a state claim for waste of assets.

12. Several of plaintiff's federal claims are grounded in fraud, e.g. Rule 10(b)–5. Although not mentioned by either party, New York's rule that actions accrue when the right comes into existence is specifically modified by CPA § 48(5) to defer accrual until discovery of the wrongdoing where the action is "to procure a judgment on the ground of fraud." To come within § 48(5), New York requires that the fraud (1) contain all the elements of a common law fraud and deceit action, as set forth in Reno v. Bull, 226 N.Y. 546, 124 N.E. 144 (1919), and (2) be essential and not merely incidental to the maintenance of an action. See Druckerman v. Harbord, 31 N.Y.S. 2d 867 (1941). Some cases even go so far as to indicate that an action for fraud and deceit may never be maintained against directors by a stockholder's derivative suit since the suit is on behalf of the corporation and knowledge by the directors is corporate knowledge as well. See American Cities Power & Light Corp. v. Williams, 189 Misc. 829, 69 N.Y.S.2d 197, 202–204 (Sup.Ct.1947); Lever v. Guaranty Trust Co., 262 App. Div. 1044, 30 N.Y.S.2d 532 (2d Dept. 1941). But see, Mencher v. Richards,

may consider the New York period shorter than that of Pennsylvania,[13] at least with respect to those federal claims of plaintiff's that fail to meet the strict requirements of common law fraud and which are against the individual Tonopah directors as opposed to the corporate defendants.[14]

██ Based on the facts alleged in the complaint and the papers before us it is evident that the acts complained of were completed by July 18, 1955 at the latest, more than nine years before commencement of this action on February 18, 1965. Applying the New York rule that claims accrue without regard to the date of discovery of the wrongdoing and when the plaintiff first acquires the right to seek a judicial remedy, it is apparent that a six year period, unless suspended, would have elapsed some three years before this action was brought.[15] While certain of the claims might be subject to a more liberal rule of accrual,[16]

256 App.Div. 280, 282, 9 N.Y.S.2d 990 (2d Dept.1939), aff'd 283 N.Y. 176, 27 N.E.2d 982 (1940). Possibly certain of plaintiff's federal claims fall within § 48(5). However, in view of the federal tolling doctrines of fraudulent concealment and of adverse domination, which we discuss below, and their application to all federal claims, whether or not based upon fraud, we find it unnecessary to become involved at this point in the intricacies of New York law on accrual. We shall assume the limitations period began to run as to all federal claims herein when the cause of action came into existence.

13. Plaintiff alleges generally that "the transactions referred to in the complaint under the Securities Acts and Investment Company Act occurred in New York * * *." See Plaintiff's Rule 9(g) Statement, para. 13. We need not determine whether this statement meets defendants' contention that the events all took place in Pennsylvania with sufficient specificity to raise a factual issue, Rule 56(e), F.R.Civ.P., since New York's period of limitation is the shorter of the two in any event.

14. CPA § 48(8), providing for a six year period, is limited solely to suits against directors, officers or shareholders. See Augstein v. Levey, 3 A.D.2d 595, 162 N.Y.S.2d 269 (1st Dept.1957), aff'd 4 N.Y.2d 791, 173 N.Y.2d 27, 149 N.E.2d 528 (1958); Matter of Baldwin Trading Corp., 8 N.Y.2d 144, 202 N.Y.S. 2d 312, 168 N.E.2d 383 (1960); Coane v. American Distilling Co., 298 N.Y. 197, 81 N.E.2d 87 (1948). As against the corporate defendants, who are not within the terms of this six year provision, the general ten year equity statute of limitations, CPA § 53, may apply since plaintiff seeks to impress a trust and to obtain rescission and an accounting for profits, all equitable relief. See Potter v. Walker, 276 N.Y. 15, 25–26, 11 N.E. 2d 335 (1939); Ripley v. International Railways of Central America, 196 Misc. 798, 800, 95 N.Y.S.2d 202 (Sup.Ct.1944); Gass v. Nelson, 82 N.Y.S.2d 641, 643 (Sup.Ct.1948); Turner v. American Metal Co., 36 N.Y.S.2d 356, 380–388 (Sup.Ct.1942); Augstein v. Levey, 3 A. D.2d at 599, 162 N.Y.S.2d 269. On the other hand, these claims may still fall within the six year period provided for by § 48(2) as to actions "to recover upon a liability created by statute." See Fischman v. Raytheon Mfg. Co., 188 F. 2d 783, 787 (2d Cir. 1951). We find it unnecessary to determine this particular issue, which could only save plaintiff's federal claims against certain of the defendants even if resolved in plaintiff's favor, for we hold for the reasons set forth immediately hereafter that even assuming defendants are correct in their contention that the applicable period of limitations as to all defendants on all of the federal claims is a uniform six years accruing when plaintiff first acquires the right to seek a judicial remedy, defendants' motion for summary judgment as against these federal claims must fail.

15. The period would have elapsed regardless of whether state law determined the time at which the federal rights of action came into existence, or whether, as is apparently the case, this particular issue is determined by federal law pursuant to the mandate of Rawlings v. Ray, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941); Cope v. Anderson, 331 U.S. 461, 464, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); Moviecolor v. Eastman Kodak Co., *supra*, 288 F.2d at 83. See also, Azalea Meats, Inc. v. Muscat, 386 F.2d 5, 8–9 (5th Cir. 1967).

16. See fn. 12, *supra*.

or even a more lengthy limitations period,[17] we need not linger to determine which, if any, of plaintiff's federal claims might thus be saved, since, in any event, we hold for the reasons set forth immediately below that a factual issue is presented with regard to whether the running of the applicable statute of limitations as to all of these federal claims against all defendants has been suspended by one or more federal equitable doctrines, and that defendant is therefore not entitled to summary judgment.

### 2. Plaintiff contends limitations statute does not defeat claim

Plaintiff asserts four grounds by which it seeks to avoid the limitations bar.

#### a. Laches

At the outset we are met with plaintiff's contention that his action is based on "a federally created right * * * for which the sole remedy is in equity," and that as a consequence statutes of limitations barring actions at law are inapplicable, for the traditional equitable doctrine of laches controls instead. See Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Russell v. Todd, 309 U.S. 280, 289, 60 S.Ct. 527, 84 L.Ed. 754 (1940). We disagree.

We are not persuaded that plaintiff's sole remedy is in equity. Rather, we believe this action falls within the rule that where equity jurisdiction is exercised in aid or support of a legal right, or predicated upon a legal cause of action, or where it is concurrent with that at law, the federal court will withhold equitable relief if the forum's limitation would bar the concurrent legal right. See Russell v. Todd, supra at 289, 60 S.Ct. 527; Cope v. Anderson, 331 U.S. 461, 463–464, 67 S.Ct. 1340, 91 L.Ed.

1602 (1947). See also, 3 Loss, Securities Regulation, 2d ed. at 1771–1773 (1961).

As stated by Judge Leahy:

"The decisive feature, then, which gives jurisdiction the flavor of concurrency, is not the narrow question of whether formal relief requested in a particular action is equitable or legal, primary or incidental, but the broader determination of whether the federal right in issue may be judicially enforced in any action by means both legal and equitable."

Tobacco & Allied Stocks v. Transamerica Corp., 143 F.Supp. 323, 327 (D. Del.1956), aff'd 244 F.2d 902 (3d Cir. 1957). Petitioner's complaint charges violations of federal securities laws [18] which under the common law tort doctrine of private action based on violation of a statute and statutory provisions to the effect that every contract made in violation of a federal securities statute or any rule thereunder is void,[19] provide the basis for an implied liability and a civil action at law for damages. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Brown v. Bullock, 194 F.Supp. 207 (S.D. N.Y.1961), aff'd 294 F.2d 415 (2d Cir.); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951); Osborne v. Mallory, 86 F.Supp. 869 (S.D.N.Y.1949). See also, 3 Loss, Securities Regulation, 2d ed. at 1757–1763 (1961). The availability of an action seeking legal damages renders plaintiff's claims "legal" for the purposes of determining the existence of a concurrent remedy at law, and this conclusion is not affected by the eventual inadequacy of this legal remedy. See Tobacco & Allied Stocks v. Transamerica Corp., 143 F.Supp. at 327. See also, 3 Loss, Securities Regulation, 2d ed. at 1772–1773 (1961). Furthermore, the fact that this is a stockholder's de-

---

17. See fn. 14, *supra*.

18. Securities and Exchange Act of 1934, § 29 and § 10(b) and Rule 10b–5 thereunder; Securities Act of 1933, § 17; Investment Company Act of 1940, §§ 1

(b) (1), (2) and (4), 36, 34(a), 37, and 47(b).

19. See Securities Exchange Act of 1934, § 29(b); Investment Company Act of 1940, § 47(b).

rivative action on behalf of the injured corporation should not be seen as affecting the concurrency of the "legal right" merely because this particular remedy is equitable. See, 3 Loss, Securities Regulation, 2d ed. at 1773 (1961). See generally, Tobacco & Allied Stocks v. Transamerica Corp., 143 F.Supp. at 326–327.

We therefore find plaintiff's federal claims governed by the statute of limitations. We find additional support for this conclusion by virtue of the fact that at least with respect to non-derivative civil actions pursuant to Rule 10b–5, statutes of limitations have been held applicable. See Osborne v. Mallory, *supra* 86 F.Supp. at 879; Fischman v. Raytheon Mfg. Co., *supra* 188 F.2d at 787; Tobacco & Allied Stocks v. Transamerica Corp., *supra* 143 F.Supp. at 327.

■ In any event, plaintiff sets forth no considerations which might justify holding laches, even if applicable, to be a defense to the motion for summary judgment, where the motion would be granted if the statute of limitations controlled. Plaintiff sets forth facts indicating fraudulent concealment and continuing control on the part of wrongdoers; however, as we expect will become clear below, these equitable doctrines are read into every statute of limitation where a federally-created right enjoys a remedy at law, as well as where the remedy is solely in equity and the doctrine of laches applies. See Holmberg v. Armbrecht, 327 U.S. at 397, 66 S.Ct. 582; Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2d Cir. 1961), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26; Tobacco & Allied Stocks v. Transamerica Corp., 143 F.Supp. 323, 328–329 (D.Del.1956), aff'd, 244 F.2d 902 (3d Cir. 1957).

#### b. Tolling

Having determined that plaintiff's cause of action is subject to the applicable statute of limitations of the forum state, and having assumed that period to be six years, we consider plaintiff's several arguments in support of his contention that the statute has been tolled.

#### (i). fraudulent concealment

■ Since the present complaint presents a claim of federal origin cognizable only in a federal forum, 15 U.S.C. § 78aa, the fraudulent concealment doctrine of Bailey v. Glover, 21 Wall. 342, 22 L.Ed. 636 (1875), which suspends the running of statute for as long as the alleged fraud is concealed by the wrongdoers, is available to plaintiff, should the circumstances warrant, despite the fact that under state law the period may run from the date of the perpetration of the wrong regardless of the date of discovery. See Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2d Cir. 1961), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26; Janigan v. Taylor, 344 F.2d 781, 784 (1st Cir. 1965), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120; Tobacco & Allied Stocks v. Transamerica Corp., *supra* 143 F.Supp. at 328 and 329. See also, 3 Loss, Securities Regulation, 2d ed., 1775–1776 (1961). Judge Friendly in *Moviecolor* dismissed the complaint on the ground plaintiff had failed to sufficiently meet its burden of pleading with specificity the circumstances of the fraudulent concealment and its discovery to gain the benefit of this federal equitable doctrine. However, as we previously noted, 274 F.Supp. at 256–257, and as stated by the Court of Appeals:

"Unlike the situation in *Moviecolor*, see 288 F.2d at 88, the record here suggests the possibility that the complaint might be amended to allege sufficient facts to invoke the benefits of this rule. Thus, although it is arguable that the filing of the *Hawkins* complaint in 1957, more than six years before the commencement of this suit, alone would provide sufficient notice of the alleged fraud to start the period of limitations running against all Tonopah stockholders, there is also the suggestion in the record that annual reports distributed by the corporation within six years of the instant action may have been designed by the defendants to mislead

stockholders as to the true facts upon which the *Hawkins* action was based. Under these circumstances, the state statute might be tolled even under the less liberal New York law." 391 F.2d at 970.

■ Accordingly, cognizant of the mandate of Rule 15(a), F.R.Civ.P., that leave to amend "shall be freely given when justice so requires," we grant plaintiff leave to amend his complaint "as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made."[20] Stearns v. Page, 7 How. 819, 829, 12 L.Ed. 928 (1849). See Rule 9 (b), F.R.Civ.P.; Moviecolor Ltd. v. Eastman Kodak Co., *supra* 288 F.2d at 88.

Although we will entertain an application to amend, plaintiff has not as yet indicated that it can or, for that matter, will so move. Therefore, we are constrained to consider the other grounds plaintiff sets forth for tolling the statute.

### (ii) adverse domination

■ It is an accepted federal equitable doctrine that the running of a statute of limitations may be suspended during a period of adverse domination of the injured corporation by the wrongdoers. See International Railways of Central America v. United Fruit Co., 373

F.2d 408, 412–416 (2d Cir. 1967); Moviecolor Ltd. v. Eastman Kodak Co., supra 288 F.2d at 88; Michelsen v. Penney, 135 F.2d 409, 415 (2d Cir. 1943); Dabney v. Levy, 191 F.2d 201 (2d Cir. 1951); Austrian v. Williams, 103 F.Supp. 64 (S.D.N.Y.1952), rev'd on other grounds, 198 F.2d 697 (2d Cir.), cert. denied 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701.

■ Adverse domination, resting upon notions of undue influence and duress, stands apart from the doctrine of fraudulent concealment just discussed. See Moviecolor Ltd. v. Eastman Kodak Co., supra 288 F.2d at 88. The rationale is that if the wrongdoers by virtue of their control of corporate decision-making have foreclosed the possibility that the corporation might bring suit, then they should not reap benefit from their position of domination and during such time the corporation should not be held to account for the delay in instituting suit.

■ To gain the benefit of this doctrine plaintiff must show "a full, complete and exclusive control in the directors or officers charged." See International Railways of Central America v. United Fruit Co., 373 F.2d at 414. Meeting this rather heavy burden demands "at least that once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue."[21] *Id.* at 414.

---

**20.** Plaintiff's complaint does not allege either fraudulent concealment or sufficient facts from which such an inference could be drawn. His contention that the affidavit of Michael J. McLaughlin raises the factual issue of fraudulent concealment and obviates the need for an amendment of the complaint to place this issue in factual dispute, and thus beyond the reach of summary judgment, is erroneous. Even after such an amendment, plaintiff may be required to support its allegations with sworn affidavits setting forth specific facts showing that there is a genuine issue for trial. See Rule 56(e), F.R.Civ. P. However, the McLaughlin affidavit fails to satisfy the requirement of Rule

56(e) that it be "made on personal knowledge" and "set forth such facts as would be admissible in evidence." Thus, in the absence of an amended complaint, there is at present no showing that there is a triable issue of fact as to fraudulent concealment.

**21.** Judge Friendly left "for another day the more difficult question whether or under what circumstances the mere possibility of suit by an informed stockholder or director would end tolling due to 'domination' of a corporation by the alleged wrongdoer." 373 F.2d at 416. In view of the affidavit of Michael J. McLaughlin recounting the frustration of the prior *Hawkins* action due to in-

In *International Railways* plaintiff failed to meet this burden, but under circumstances differing from this case.[22] Here plaintiff's complaint alleges that the wrongdoers have dominated and controlled the business and affairs of Tonopah continuously since the commission of the acts complained of and continue to do so. See Complaint, paras. 15–18, 29(e), and 40(a) and (b). The allegations of the complaint to this end, wholly undisputed, much less rebutted, by defendants, must be deemed true for the purposes of this motion. Certainly, in the absence of any contrary allegations on the part of the defendants as to the extent and quality of their control, plaintiff's allegations in the complaint suffice to raise an issue of fact in this regard. Cf. *Schoenbaum v. Firstbrook*, 405 F.2d 215 (2d Cir. 1968).

Unlike fraudulent concealment, plaintiff's complaint is sufficient to raise the factual issue of adverse domination without need of an amendment. For this reason, summary judgment dismissing the complaint is inappropriate and denied.

(iii) pendency of prior class action

Plaintiff's final contention is that the statute was tolled during the pendency of the prior Hawkins suit. A class action, such as that maintained by Hawkins, instituted before the running of the statute, prolongs beyond the period of the statute the time during which other members of the class may intervene. See *Richmond v. Irons*, 121 U.S. 27, 52–53, 7 S.Ct. 788, 30 L.Ed. 864 (1887); *Escott v. Barchris Construction Corp.*, 340 F.2d 731, 733–735 (2d Cir.

1965), cert. denied sub nom. *Drexel & Co. v. Hall*, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1966); *York v. Guaranty Trust Co.*, 143 F.2d 503, 528–529 (2d Cir. 1944); rev'd on other grounds, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Polakoff v. Delaware Steeplechase and Race Assoc.*, 254 F.Supp. 574, 578 (D.Del. 1966). See also, 3 A Moore's Federal Practice, 2d ed. at 3476 (1968); 3 Loss, Securities Regulation, 2d ed. at 1822 (1961). The purpose of this exemption is to avoid the trap for the unwary, which, if the statute were not tolled, would arise as to absent class members who, "hearing that an action had been brought on their 'behalf,' would believe that they did not have to act in order to keep the statute from running." See *Escott v. Barchris Construction Corp.*, 340 F.2d at 734. It would not appear to us that this laudable policy should be extended indefinitely; yet, that would be the result were we to construe this exemption as permitting a member of the class to bring a new action after the prior action has been terminated and the period designated in the applicable statute of limitations has run.[23] We need not finally resolve this issue, however, in the light of our denial, with respect to plaintiff's federal claims and for the reasons set forth above, of defendants' motion for summary judgment of dismissal.

B. Pendent State Claims

Having considered and rejected defendants' contention that the statute of limitations presents a bar to plaintiff's suit in so far as plaintiff's federal claims are concerned, we turn

sufficient finances (see 373 F.2d at 412 and 416), defendants' utter failure to contest plaintiff's allegations of domination and control, and the paucity of the papers before us as to this issue, resolution by summary judgment of this issue is inappropriate here.

22. With respect to the fact that the court in *International Railways* could not conclude a demand on the directors would necessarily have been fruitless, Judge Friendly noted:

"While this issue is one on which plaintiff might have been entitled to take evidence, it raised no objection either in the district court or here to disposition of [defendant's] motion on the affidavits and records submitted, and it has not adverted to any further evidence that might be introduced on this point." 373 F.2d at 415 n. 10.

23. Over a year after the Hawkins action had been dismissed, Saylor moved to intervene therein. Judge Ryan denied that motion as untimely on August 24, 1964.

next to plaintiff's state causes of action. These claims against certain directors of Tonopah for waste and breach of fiduciary duty are here solely by way of pendent jurisdiction. No federal statute or federal interest is herein involved. Finding their source, indeed their entire existence, in state law, these claims are governed by state, not federal, substantive law. See Maternally Yours v. Yours Maternity Shop, 234 F.2d 538, 540 n. 1 (2d Cir. 1956); Austrian v. Williams, 198 F.2d 697, 700 (2d Cir. 1952); Mintz v. Allen, 254 F.Supp. 1012 (S.D.N.Y. 1966). See also, Moore's Federal Practice § 0.305[3] (2d ed. 1965). It is beyond dispute that a state statute of limitations is substantive in nature. See Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

 While we "borrowed" New York law for the purpose of determining the applicable period of limitations for the federal claims, we were free there to apply federal equitable doctrines to relieve plaintiff from the burden imposed by state strictures. With respect to the state claims, however, we are confined solely to the State's statute of limitations and exemptions therefrom.

 We may continue to assume with defendants that New York's "borrowing statute" is applicable,[24] and that defendants are entitled to the shorter of the limitation periods provided by New York and Pennsylvania.[25] As we have already found, the period provided by Pennsylvania law is six years and may be suspended by an affirmative independent act of fraudulent concealment.

 To summarize what has been discussed more fully in reference to the federal claims (see Part I A(1) above), New York, in contrast to Pennsylvania's uniform period of six years, limits the period within which an action may be brought based on waste of corporate assets to three years.[26] All other claims against directors of a corporation, including a claim for breach of fiduciary duty, are limited by the six year period provided for in Section 48(8) of the Civil Practice Act. Both periods begin to run from the time of wrongdoing without regard to the date of discovery.[27] See CPA § 11.

 New York, unlike the federal system, does not toll the running of the statute because of adverse domination or control by the wrongdoers, even where the directors' acts are wilful. See Laird v. United Shipyards, Inc., 163 F.2d 12, 15 (2d Cir. 1947); Austrian v. Williams, *supra*; Rieser v. Baltimore & Ohio R.R. Co., 228 F.2d 563, 565 (2d Cir. 1955); Warthman v. Manufacturers Trust Co., 37 N.Y.S.2d 129, 133 (Sup.Ct.1940); Chance v. Guaranty Trust Co., 282 N.Y. 656, 26 N.E.2d 802 (1940); Potter v. Walker, *supra*; Turner v. American Metal Co., 36 N.Y.S.2d at 381. New York does, however, recognize the doctrine of equitable estoppel, and in applying it has subsumed the doctrine of fraudulent concealment under the principle that "no man may take advantage of his own wrong." See General Stencils, Inc. v. Chiappa, 18 N.Y.2d 125, 272 N.Y.S.2d 337, 219 N.E.2d 169 (1966); Erbe v. Lincoln Rochester Trust Co., 13 A.D.2d 211, 214 N.Y.S.2d 849 (1st Dept. 1961), appeal dismissed, 11 N.Y.2d 754, 226 N.Y.S.2d 692, 181 N.E.2d 629 (1962); Lowell Wiper Supply Co. v. Helen Shop Inc., 235 F.Supp. 640, 645

---

24. As will be set forth below, New York is unquestionably the more restrictive jurisdiction and, thus, its statute of limitations would apply whether or not the borrowing statute is applicable.

25. As we have already seen, in determining which is shorter we must consider not only the statutory period but "all its accounterments," including tolling doctrines and rules governing accrual of causes of action. See Lowell

Wiper Supply v. Helen Shop, Inc., 235 F.Supp. at 644.

26. See note 11, *supra*.

27. See note 12, *supra*. Moreover, and in any event, plaintiff's complaint fails to allege a state law claim of fraud, resting instead upon breach of fiduciary duty. Therefore the exceptional accrual standard of § 48(5) is not applicable to either state claim.

(S.D.N.Y.1964). Thus, where a fiduciary has concealed the fact of his wrongdoings, he is estopped from asserting the statute of limitations as a bar to plaintiff's claims.

There being no State decision on the issue, we believe that what we have already held with reference to plaintiff's allegation of fraudulent concealment regarding the federal claims applies with equal force here. Thus, equitable estoppel by way of fraudulent concealment must be placed in issue by plaintiff before he may enjoy the benefit of its application. Without such tolling, plaintiff's claim for waste is barred by the three year statute; and the breach of fiduciary duty claim is barred by the six year statute.

Plaintiff is granted leave to amend his complaint to show with specificity the circumstances of the alleged fraudulent concealment and its discovery.[28] Failing such an amendment within thirty days from the date of this order, plaintiff's state claims shall be dismissed as barred by the statute of limitations.

## II *Security for Expenses*

Since we deny defendants' motion for summary judgment, we must consider the issue of security for expenses. Tonopah, in addition to joining in the motion for summary judgment, moves in the alternative for an order, pursuant to Section 627, New York Business Corporation Law, McKinney's Consol.Laws, c. 4, requiring plaintiff to give security for the reasonable expenses, including attorney fees, which may be incurred by Tonopah in connection with the action; staying the prosecution of this action until the furnishing of security; and dismissing this action in the event of failure to comply with same.

Plaintiff alleges claims under State law for breach of fiduciary duty and corporate waste against certain directors of Tonopah, which actions are separate from, although pendent to, the federal claim. Plaintiff fails to allege either holdings of five percent of any class of the outstanding shares of Tonopah, or that said shares held have a fair value in excess of $50,000. For this reason, pursuant to Section 627 of the New York Business Corporation Law, Tonopah is entitled to security to the extent of this separate State cause of action for the reasonable expenses which it may incur in connection with this action. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). This requirement of posting security is unaffected by whether federal jurisdiction over the state claim is based on diversity of citizenship or, as here, on pendent jurisdiction; it is similarly immaterial that no additional expense may be involved in defending both claims as opposed to defending only the federal claim. See Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y. 1967); Phelps v. Burnham, 327 F.2d 812 (2d Cir. 1964); Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559, 569 (S.D.N.Y.1964).

Such security cannot be required unless the state claims remain a part of this action. See Fielding v. Allen, 181 F.2d 163 (2d Cir. 1950), cert. denied, sub nom. Ogden Corp. v. Fielding, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600. Should plaintiff not amend his complaint so as to create a triable issue of fact respecting concealment, plaintiff's state claims will be dismissed and so ending the requirement of posting security.

Accordingly, if, but only if, plaintiff does amend his complaint, plaintiff and

---

28. New York's doctrine of equitable estoppel by way of fraudulent concealment is considerably less liberal than its federal counterpart in that an affirmative independent act of concealment on the part of the wrongdoer is required, whereas the federal doctrine of fraudulent concealment merely requires, where fraud is involved on the part of a fiduciary, that plaintiff remained in ignorance of it without any fault or want of due diligence or care on his part. Compare Bailey v. Glover, 21 Wall. 342, 348, 22 L.Ed. 636 (1875) with General Stencils Inc. v. Chiappi, supra at 127 and 128, 272 N.Y.S.2d 337, 219 N.E.2d 169. See Saylor v. Lindsley, 391 F.2d at 970; Janigan v. Taylor, 344 F.2d at 784.

Tonopah shall furnish this Court further affidavits bearing on the estimated expenses, including attorney's fees, which may be incurred by Tonopah in connection with this action to assist us in fixing the amount of reasonable security to which Tonopah would be entitled.

\* \* \* \* \* \*

Defendants' motion for summary judgment dismissing the federal claims is denied. Their motion for summary judgment dismissing the state claims is denied in the event plaintiff amends his complaint within the time allotted; otherwise defendants' motion is granted as to these state claims. Assuming the continuation of plaintiff's state claims, as discussed above (see Part II, *supra*) defendant Tonopah's motion for filing of security is granted, the amount to be set following further amplification of the estimated expenses by the parties.

So ordered.